Gary Minevich, Cal. (SBN #256136)
Minevich Law, APC
21700 Oxnard St, Ste. 950
Woodland Hills, CA 91367
Tel. 818.878.8740
Fax: 818.878.8745
Email: habeas@minevichlaw.com

Attorney for Plaintiff

**DETAINED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Karley Andreina LUNA CARDENAS,<br><br>Petitioner,<br>v.<br><br>Thomas P. GILES, Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>Todd BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br><br>Respondents. | Case No.<br><br>A-235-177-334<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief |

**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**

*(Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief)*

## STATEMENT OF FACTS

1. Petitioner Karley Andreina Luna Cardenas is a native and citizen of VENEZUELA who also holds Colombian nationality. She was lawfully admitted to the United States at Orlando, Florida, on June 4, 2024, as a B-2 nonimmigrant visitor, upon presentation of her Colombian passport bearing a valid B-1/B-2 visa, with an authorized period of admission through December 3, 2024 (I-94 Record No. 000659396A4). See Exhibit "A" — Passport and B-1/B-2 Visa and I-94 Admission Record.

2. Petitioner fled persecution and intimidation by armed guerrilla groups operating in the border region between Venezuela and Colombia. As a result of that persecution, Petitioner timely submitted a Form I-589, Application for Asylum and for Withholding of Removal — approximately four months after her arrival, while she remained in valid B-2 status and well within the one-year statutory deadline — which was received and accepted by USCIS on October 11, 2024 (Receipt No. MGL2512941538; A-235-177-334), and which remains pending before the Los Angeles Asylum Office. See Exhibit "B" — Form I-797C Receipt Notice; Exhibit "C" — Form I-589.

3. USCIS's own receipt notice expressly instructs Petitioner, in plain terms: **"You may remain in the United States until your asylum application is decided."** Exhibit "B" at 1. Petitioner has done exactly that.

4. Because Petitioner filed a bona fide asylum application before the expiration of her authorized stay, and that application remains pending, Petitioner does not accrue unlawful

presence. See 8 U.S.C. § 1182(a)(9)(B)(iii)(II). Her continued presence in the United States is precisely the course of conduct the government itself authorized in writing.

5. Petitioner has continuously resided in Calabasas, California, at the same address since her arrival in June 2024, and has resided in the United States for more than two years.

6. No removal proceedings have ever been initiated against Petitioner. She has never been served with a Notice to Appear, and no immigration judge has ever had occasion to review her custody.

7. Petitioner has no criminal history whatsoever.

8. On August 19, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") at John Wayne Airport ("SNA") in Santa Ana, California, while traveling on a domestic itinerary. Petitioner was not seeking admission to the United States; she was traveling entirely within it.

9. The detaining officers told Petitioner that she had "overstayed" her visa — in essence, that she is in violation of her nonimmigrant status — and presented her with an ultimatum: sign papers consenting to her own deportation, or be detained. Petitioner refused to sign, and she was detained on the spot. The overstay assertion is contradicted by the government's own records and its own written notice: Petitioner timely filed a Form I-589 while in valid B-2 status, that application remains pending, she accrues no unlawful presence, and USCIS expressly authorized her to **"remain in the United States until [her] asylum application is decided."** Exhibit "B."

10. Petitioner is currently detained at a location Respondents have not disclosed, and counsel has been unable to ascertain her precise whereabouts. On information and belief, Petitioner is being held at a facility within Orange County, California, in this district.

11. Petitioner reasonably fears that Respondents will imminently transfer her to a detention facility outside this district, or otherwise beyond the reach of counsel. The district court's habeas jurisdiction, once properly acquired, is not defeated by the petitioner's subsequent transfer to another facility or district when an appropriate custodian remains within the court's territorial jurisdiction. *Ex parte Endo*, 323 U.S. 283, 304–06 (1944). Petitioner nevertheless respectfully asks this Court to enjoin Respondents from transferring her outside the Central District of California during the pendency of this action, to preserve her access to retained counsel, to her fiancé, and to this Court.

12. Petitioner was detained without a warrant, without notice, without any changed circumstance, and without any bond hearing or individualized custody determination. ICE did not set a bond. Petitioner has not been provided any custody determination by any neutral adjudicator — either before or since her detention.

13. Petitioner has lived at the same fixed residence in Calabasas, California, since her arrival, has no criminal history, and has diligently pursued her pending asylum claim. Petitioner's fiancé, Nathan Byers, is a United States citizen, a college graduate, and a financial controller at Moonlight Basin in Big Sky, Montana, residing at 45 Turkey Leg Rd, Unit 1054, Big Sky, MT 59716. Petitioner has also been employed full time as a family aide for the Scott J. Ferrell Asset Trust since August 2024, earning approximately $8,000 per month. Petitioner's United States citizen fiancé, her fixed residence, her steady employment, and

her diligent pursuit of her pending asylum claim are among the strongest possible indicators that she will not abscond and will instead remain to pursue her asylum claim.

14. Nothing changed on August 19, 2026 — except that Petitioner passed through a domestic airport. Respondents identified no changed circumstance, no new evidence of dangerousness or flight risk, and no violation of any condition of Petitioner's stay. The sole ground articulated — an alleged visa "overstay" — is refuted by USCIS's own receipt notice, and the sole event precipitating her detention was her refusal to sign papers consenting to her own removal — that is, her refusal to abandon the asylum claim the government itself accepted and authorized her to pursue.

15. Detaining Petitioner without any bond hearing or individualized custody determination — on an "overstay" premise contradicted by the government's own records, and as the announced penalty for declining to consent to her own removal — rests on no lawful factual or legal predicate and cannot justify Petitioner's continued civil detention.

16. The Constitution protects Petitioner — and every other person present in this country — from arbitrary deprivations of liberty and guarantees her due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint [has] always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

17. Petitioner seeks declaratory and injunctive relief to compel her immediate release from custody, where she has been held since being unlawfully detained without first being

provided a constitutionally adequate hearing to determine whether her incarceration is justified, and to prevent her transfer outside this district while this action is pending.

18. Absent review in this Court, no other neutral adjudicator will examine Petitioner's rights: Respondents will continue — unchecked — to detain her unlawfully without due process.

19. Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to release Petitioner from detention within 10 days.

20. Petitioner's continued detention is arbitrary and unlawful, and she requests that this Court order her immediate release from ICE custody.

## JURISDICTION

21. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

22. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

23. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651 — including an order under the All Writs Act enjoining Petitioner's transfer outside this district in aid of the Court's habeas jurisdiction.

24. Federal District Courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *Zadvydas*, 533 U.S. at 687.

25. Federal courts also have federal question jurisdiction, through the Administrative Procedure Act ("APA"), to deem unlawful and set aside agency action that is arbitrary,

capricious, an abuse of discretion, or otherwise inconsistent with law. 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (judicial review of agency action under the APA may be proceeded by any applicable form of legal action, including but not limited to habeas corpus). The APA affords a right of review to a person who is adversely affected or harmed by agency action.

## VENUE

26. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner was detained within this district at John Wayne Airport, Santa Ana, California, where, on information and belief, she remains in Respondents' custody at a facility within Orange County, California, in this district, and because a substantial part of the events or omissions giving rise to this action occurred and continue to occur within this district. No real property is involved in this action. 28 U.S.C. § 1391(e).

## CUSTODY AND REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

27. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith" unless Petitioner is not entitled to relief. Under 28 U.S.C. § 2243, once an order to show cause issued, the respondent must ordinarily file a return within three days, unless the court for good cause allows additional time, not exceeding twenty days.

28. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and

imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

29. Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because she was arrested by Respondents and remains in their legal and physical custody — on information and belief, at a facility within Orange County, California, in this district. Whichever facility she may hereafter be housed in, Petitioner is under Respondents' and their agents' direct control, and any transfer between facilities does not affect her custody status or this Court's jurisdiction. *Ex parte Endo*, 323 U.S. at 304–06. To preserve the orderly adjudication of this Petition and Petitioner's access to counsel, Petitioner asks the Court to enjoin any transfer of Petitioner outside the Central District of California during the pendency of this action.

**PARTIES**

30. Petitioner Karley Andreina Luna Cardenas is a native and citizen of VENEZUELA, who also holds Colombian nationality, and who has been in immigration detention since August 19, 2026, when she was detained at John Wayne Airport on an alleged visa "overstay" after refusing ICE officers' demand that she sign papers consenting to her own deportation. ICE did not set bond, and Petitioner has received no custody determination by any neutral adjudicator. Petitioner was lawfully admitted in 2024 and has a timely filed asylum application pending with USCIS.

31. Respondent Thomas P. GILES is the Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division. As such, Thomas P. GILES is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

32. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

33. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

34. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

35. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

## LEGAL FRAMEWORK

### ICE'S DETENTION OF PETITIONER, IN DIRECT CONTRADICTION OF THE GOVERNMENT'S OWN WRITTEN AUTHORIZATION FOR HER TO REMAIN, VIOLATES THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS.

36. Under the *Accardi* doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. See *Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954) (holding that BIA must follow its own regulations

in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures … even where the internal procedures are possibly more rigorous than otherwise would be required.").

37. The requirement that an agency follows its own policies is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977); see also *Morton*, 415 U.S. at 235-36; *United States v. Heffner*, 420 F.2d 809, 813 (4th Cir. 1969).

38. When agencies fail to adhere to their own policies as required by *Accardi*, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, see *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018), or as a due process violation, see *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.").

39. In some circumstances, a court may grant relief without requiring an independent showing of prejudice when an agency fails to follow a regulation designed to protect the affected party's rights. *See Montilla v. INS,* 926 F.2d 162, 167–68 (2d Cir. 1991).

40. Here, DHS itself — through USCIS's Form I-797C receipt notice — instructed Petitioner in writing that she "may remain in the United States until [her] asylum application is

decided." A sister DHS component then detained her for doing precisely what the agency told her she could do, labeling her an "overstay" in the teeth of the agency's own written authorization and 8 U.S.C. § 1182(a)(9)(B)(iii)(II) — and demanded, as the price of her liberty, that she sign away the very asylum claim the agency had accepted. ICE has failed to act consistently with the agency's own representations, procedures, and controlling law, and Petitioner's continued detention requires this Court's intervention.

## CLAIMS FOR RELIEF

## GROUND ONE

## VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS

Petitioner has the right to challenge the legality of her detention.

41. The allegations in the above paragraphs are realleged and incorporated herein.

42. Petitioner has due process rights to challenge her detention. *Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (while noncitizens outside the United States' "geographic borders" lack constitutional protections, all "persons" within them are protected by the Due Process Clause, regardless of immigration status); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022) (though constitutional rights of citizens and noncitizens "are not coextensive," noncitizens are entitled to due process, including to challenge detention pending proceedings).

43. Petitioner's due process claim is particularly strong because she is not an "arriving" or "seeking admission" noncitizen: she was **lawfully admitted** to the United States on June 4, 2024, after inspection, and has resided in the interior for more than two years. See *Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by *Wilkie*

*v. Robbins*, 551 U.S. 537 (2007); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). Her detention at John Wayne Airport on August 19, 2026 occurred while she was traveling **domestically**, within the interior of the United States. She made no application for admission and crossed no border; she was simply traveling within the country the government authorized her to remain in.

44. Petitioner challenges her deprivation of liberty and detention — effected at a domestic airport, without a warrant, without notice, without changed circumstances, and without any bond hearing or individualized custody determination, and imposed as the penalty for her refusal to consent to her own removal. She is not bringing a constitutional claim with respect to the procedures governing her legal admission into the United States.

45. Petitioner has a protected liberty interest in remaining out of custody. See, e.g., *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk or a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10; *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release). Indeed, Petitioner's liberty interest is stronger still: unlike a parolee, she was admitted after inspection, timely invoked the asylum process, and holds the government's own written assurance that she may remain.

46. This Court and courts within the Ninth Circuit have found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority, and have granted relief in similar matters. See, e.g., *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal.

2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7-10 (N.D. Cal. 2025);* Gonzalez Salazar*, 2025 WL 3063629, at* 6; *Abdul Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025);* Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at* 8 (E.D. Cal. Oct. 3, 2025).

47. ICE has violated Petitioner's due process rights by detaining her without any lawful, individualized custody determination. Respondents detained Petitioner — a lawfully admitted noncitizen with a timely filed, pending asylum application and the government's express written authorization to remain — at a domestic airport, on an alleged visa "overstay" refuted by the government's own records and immediately upon her refusal to sign a consent to her own removal, without any finding, let alone one supported by clear and convincing evidence, that she is a danger to the community or a flight risk.

48. As a remedy, this Court should order Petitioner's immediate release from custody.

## GROUND TWO

## VIOLATION OF 8 U.S.C. §§ 1226(a) AND 1357(a)(2), 8 C.F.R. § 287.8(c)(2), AND THE DUE PROCESS CLAUSE

*Detention, whether styled as mandatory or discretionary, is subject to constitutional limits.*

49. The allegations in the above paragraphs are realleged and incorporated herein.

50. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

51. As an admitted noncitizen present in the interior of the United States who is not subject to any final order of removal — indeed, against whom no removal proceedings have even

been initiated — any detention authority Respondents could claim would arise, if at all, under 8 U.S.C. § 1226(a), which authorizes arrest and detention "on a warrant issued by the Attorney General" pending a decision on removal, and which contemplates release on bond or conditional parole.

52. Petitioner was arrested without a warrant. A warrantless immigration arrest is lawful only where the officer has reason to believe the noncitizen "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R. § 287.8(c)(2)(ii). No such showing could be made here: Petitioner has a pending asylum application, a fixed residence in Calabasas, no criminal history, a United States citizen fiancé, stable full-time employment, and was voluntarily identifying herself while traveling on a domestic itinerary under her own name.

53. Nor does the articulated basis for the arrest survive contact with the government's own records. The officers' stated ground — that Petitioner "overstayed" her visa, in essence that she is in violation of her nonimmigrant status — ignores that she timely filed a Form I-589 while in valid B-2 status; that the application remains pending; that she accrues no unlawful presence, 8 U.S.C. § 1182(a)(9)(B)(iii)(II); and that USCIS expressly told her in writing that she "may remain in the United States until [her] asylum application is decided." And the officers' accompanying ultimatum — sign papers consenting to her own deportation or be detained — supplies no lawful basis either: detention imposed as a penalty for declining to waive the statutory right to apply for asylum, 8 U.S.C. § 1158(a), cannot substitute for the individualized custody determination the law requires.

54. Petitioner has an interest in remaining with her community, reuniting with her fiancé, maintaining her employment, and continuing the process of seeking asylum. See *Morrissey*

*v. Brewer*, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his release on recognizance, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachment of normal life.").

55. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [him] merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017). "Rather, the federal agents must be able to present evidence of materially changed circumstances — namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." Id. Here the argument is stronger still — Petitioner was never even in proceedings, and Respondents have not presented, and cannot present, any such evidence.

56. The risk of an erroneous deprivation of Petitioner's liberty interest is high, and the government's interest in detaining her is "low." See *Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Respondents can identify no legitimate governmental interest served by the continued detention of a lawfully admitted, fully compliant asylum applicant whom the government itself authorized to remain.

57. Furthermore, Petitioner is challenging her detention on constitutional grounds, not statutory grounds alone. Whatever detention authority Respondents invoke, Petitioner's detention is unequivocally subject to constitutional limits. The Supreme Court has not precluded noncitizens from bringing as-applied constitutional challenges to their detention. *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "did not explicitly address constitutionality arguments." Likewise, the Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention. See, e.g., *Nielsen v. Preap*, 586

U.S. 392, 420 (2019); *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

58. Petitioner's detention — imposed without a warrant, without removal proceedings, without any custody determination, on an "overstay" premise refuted by the government's own records, and as the announced penalty for her refusal to consent to her own removal — violates 8 U.S.C. §§ 1226(a) and 1357(a)(2) and the Due Process Clause, and she must be immediately released.

59. This Court should so hold as well.

**GROUND THREE**

**ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT**

*Petitioner's ongoing detention — effected on an "overstay" theory contradicted by the government's own written authorization for her to remain, imposed as the penalty for refusing to sign a consent to her own removal, and without any custody review — is arbitrary and capricious, and Petitioner must be released.*

60. The allegations in the above paragraphs are realleged and incorporated herein. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

61. Respondents' detention of Petitioner is arbitrary and capricious because it rests on no individualized assessment whatsoever and is flatly contradicted by the undisputed record — including the government's own documents. Petitioner was lawfully admitted on June 4, 2024; timely filed her Form I-589 on October 11, 2024, while in valid status; resides continuously in Calabasas; and holds a USCIS receipt notice stating that she "may remain in the United States until [her] asylum application is decided." An agency cannot rationally

detain as an "overstay" a person whom the agency itself has authorized in writing to remain — much less detain her for declining to abandon the very application the agency accepted. Her continued detention is therefore not in accordance with law, must be set aside, and Petitioner must be released.

62. The Ninth Circuit in *Singh* stressed that "it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual — deprivation of liberty — is so significant." See *Singh*, 638 F.3d at 1205; *Black*, 103 F.4th at 157-58 (observing that where "an individual's liberty is at stake, the Supreme Court has consistently used [a clear and convincing] evidentiary standard for continued detention"); id. at 159 (reiterating that the government bears the burden of meeting this standard even where an individual is detained pursuant to mandatory detention). This Court should likewise require the government to carry that heavy burden to justify Petitioner's continued civil detention — a burden Respondents cannot meet on this record.

63. Thus, due process and Ninth Circuit precedent require that the government bear the burden of justifying Petitioner's ongoing detention by clear and convincing evidence, and that it do so on a lawful, accurate factual basis — not on the mechanical assumption that a lawfully admitted noncitizen with a pending, timely filed asylum application may be detained as an "overstay" — or coerced into signing away her claim — without any individualized custody determination.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a) Assume jurisdiction over this matter;

b) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

c) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. §§ 1226(a) and 1357(a)(2);

d) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner;

e) Enjoin Respondents, their agents, and all persons acting in concert with them from transferring Petitioner to any facility outside the Central District of California during the pendency of this action, in aid of this Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and to preserve Petitioner's access to retained counsel and this Court, see *Ex parte Endo*, 323 U.S. 283, 304-06 (1944);

f) Order Respondents to provide Petitioner's counsel at least 72 hours' advance written notice before any transfer of Petitioner from her current place of detention;

g) In the alternative, order Respondents to provide Petitioner a constitutionally adequate bond hearing before a neutral Immigration Judge, at which (a) the government bears the burden of proving by clear and convincing evidence that Petitioner presents a risk of flight or danger; (b) the adjudicator considers alternatives to detention and Petitioner's ability to pay a bond; and (c) the adjudicator accounts for the fact that Petitioner was lawfully admitted to the United States, timely filed an asylum application that remains pending, was expressly authorized by USCIS to remain, has a United States citizen fiancé and stable full-time employment in this country, and was detained only after she refused to sign papers consenting to her own removal;

h) Enjoin Respondents from re-detaining Petitioner without first following all applicable statutory and regulatory procedures, including 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. § 287.8;

i) Enjoin Respondents from removing Petitioner unless they provide written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; and

j) Grant any further relief this Court deems just and proper.

DATED 19th day of August 2026

Respectfully submitted,



______________________________

Gary Minevich, Esq.

Attorney for Petitioner